Hello again, Counsel. You may want to, for the record, just re-identify yourself, if you don't mind. May it please the Court, Dan Marmolevsky on behalf of Monster Beverage Corporation and Monster Energy Company, and with me is my partner, Porvi Patel. I'd like to begin, if I can, by walking through the chronology that led to the filing of this litigation. On October 31, 2012, the San Francisco City Attorney sent a letter to the Chairman and CEO of Monster Beverage Corporation. He also sent it to the New York Times the same day, in which he asked questions concerning various advertising statements on Monster Energy labels and asked questions about the safety of Monster Energy products. In December of 2012, I, along with Monster's FDA counsel, met with Steely and one of her colleagues, and we walked through a very lengthy history of the product and why it was safe, and then we provided them with very extensive documentation of the product's safety. And we submitted 10 days later a lengthy letter, which is in the record at ER 303, walking through the product and why the product was safe. In that meeting and in that letter, we said that, in our view, the issue of the safety of the product is something that is within the jurisdiction of FDA. It's not within the jurisdiction of the San Francisco City Attorney. On March 19, 2013, Mr. Herrera wrote to FDA. He attached a letter from a group of scientists that members of his office and public interest organizations and a retired California Attorney General had worked on together, in which they questioned whether or not the level of caffeine in a Monster Energy drink is generally recognized as safe under federal standards. We thought that, given Mr. Herrera's concerns, that that was something appropriate for him to do, to bring it to the agency that has responsibility for food safety and invite them to look at it. On March 29, 10 days later, Mr. Herrera sent a letter to me and the company's FDA counsel, and this is in the record at ER 340, demanding that Monster take immediate steps to reformulate its products to safe caffeine levels and stating that the level of caffeine in a Monster Energy drink was not generally recognized as safe. Three weeks after that, FDA wrote back to Mr. Herrera, and again, this is in the record at ER 213, saying that it is going to investigate the safety of caffeine added to various food products, including energy drinks. Five days later, Mr. Herrera's office wrote to me and my co-counsel with a proposed injunction requiring Monster, among other things, to state on all product labels that its energy drinks were not appropriate for individuals under age 18. They also purported to demand that Monster not sponsor an athlete or a musician who was under age 18 or to have any image on its Facebook, on the Monster Energy Facebook site or any other social media site of someone under age 18. Again, those demands were made, the demands about reformulation and this age restriction were made with full knowledge that as FDA has repeatedly confirmed that a manufacturer on its own can self-grasp, can determine that the ingredients in its products are generally recognized as safe, and only FDA can challenge that. Well, faced with those demands and following the template that the Supreme Court has made clear on many occasions, including, for example, in Morales v. TWA, we filed a lawsuit saying that his demands were preempted, that he didn't have jurisdiction to tell a manufacturer whether an ingredient in its product was safe, that that is something that is reserved to FDA. We sought declaratory relief. We sought an injunction against his filing a suit. In response, seven days later, Mr. Herrera filed his own lawsuit, and then the litigation continued both in federal court when we removed that case. No, I don't want to interrupt you, but you ought to go ahead to the heart of your argument, because you have to assume we've read these cases. Okay. So let me go to the... Thank you, Your Honor. Let me turn to the two reasons why the Court declined to allow our case to proceed. The first one was the principle of younger abstention. And the Supreme Court has made clear multiple times that abstention is an extraordinary remedy. It's not an order simply because there is a state court proceeding that involves the same subject matter. And one of the criteria that the defendant needs to satisfy to show that younger abstention should apply is that the state action implicates important state interest. And what this Court has taught us and what the Supreme Court has taught us is that you do more than just accept the statement by the state plaintiff that his claim involves important interest. You evaluate those interests, and even if they are important, you weigh them against federal interest. And so I talked about Morales v. TWA. That was a case where the federal government passed a law dealing with airline pricing and rates and in response, a group of attorneys general, including the California Attorney General, the Texas Attorney General, the New York Attorney General, all got together and they promulgated guidelines for advertising about airline fares. And they said if the airlines didn't comply with those guidelines, they were going to bring consumer protection actions. And what happened is the court said that this is a field airline regulation that is reserved to the federal government and state attorney generals have no business here. And there were consumer protection claims that were filed, for example, in New York, where the court said younger abstention doesn't apply because the federal interest outweighs the state interest. What the Ninth Circuit has said is that where state law is preempted by federal law and that preemption is readily apparent, there is no significant state interest. Counsel, with respect, harking back to the earlier case, I thought you agreed that there is, at least with respect to the safety aspect, that federal law does not preempt each aspect of this. A lot of it, yes. Content specific? Yes. But not the rest of it. It does preempt whether or not any elected official in any county or city in the state can go and say that the ingredients in your product that are sold all over the country and all over the world. You can't have one person suing in San Francisco saying, I think 160 milligrams is too much. I think it should be 140. Forgive me, Counsel. Perhaps I'm not being clear. I thought we had a discussion that made clear that if you're talking about the quantity of caffeine and so on, everybody seems to agree that's preempted. But the statute in question expressly carves out safety issues without content specification. I thought there was an agreement that was not preempted. So if that's not preempted, where in then is a state attorney general barred from dealing with pure safety issues, not content specific, but just pure safety issues? There is a comprehensive set of food safety statutes and regulations. One of those is the Nutrition Labeling and Enforcement Act, which talks about what shows up on a can. But beyond that, Congress has entrusted and given the authorization to FDA and FDA alone to police whether or not a product is generally recognized as safe. So there are some things that are preempted and some things that are not preempted. Right. Now, we're at the stage in the argument at this point of whether younger abstention applies. So would it not be possible to apply younger abstention and raise the points you're talking about as defense in the state court? Younger abstention only applies if, among other elements, the state can show that its interests predominate over the federal interest. The federal interest in food safety. That's not usually the way it's stated, but I'll take it. Usually it just says an important state interest, I think. Well, I'll give you examples from this court. Okay. I will take that. I'll take that. That's fine. But is there any reason why that state, the preemption defense, could not be raised in a state court litigation? It could be raised in state court. That's where it would be if you had not brought the preemptive action in federal court. It would be in a state action. Maybe you could get it removed. Maybe you couldn't. I don't know. But in any event, it could be raised in that action, could it not? It could be raised in that action. But what younger tells us, what Sprint tells us, what NOPC tells us, three leading Supreme Court decisions, is that if the federal court has jurisdiction, it is supposed to exercise that jurisdiction and only abstain in narrow circumstances. What the Ninth Circuit has said is in Potrero, is unless the interests that the state advances are vital to the operation of state government, federal district courts must fulfill their unflagging obligation to exercise the jurisdiction given them. So in Gartrell, there was certainly a state interest in enforcing the state's contractor licensing laws, but the law was preempted because there were federal statutes that dealt with the requirements for a contractor on a federal project. Fort Belknap, again, another Ninth Circuit decision, dealing with enforcement of liquor laws. The state has a strong interest in enforcement of liquor laws, but the issue there was whether or not the state had the right to enforce those laws on an Indian reservation, and the Ninth Circuit said no, it doesn't. The Fourth Circuit in Harper v. Public Service, again, the state interest in improper disposal of solid waste, that's an important interest, but it was outweighed by the Commerce Clause and whether or not there was an unfair restriction on commerce. So again, there is an interest that the state has in regulating deceptive advertising, but as the Supreme Court said in Morales v. TWA, and as, for example, the New York court in a parallel case in People v. Abrams v. TWA said, the interest in regulating against deceptive advertising is outweighed by the federal regulatory scheme dealing with airline regulation. Again, we have a safe harbor here. We've determined that the level of caffeine in our product is safe, and there are remedies that are available to a citizen. They can petition FDA, and Mr. Herrera sent a letter to FDA saying, please intervene, and FDA can take action, but you can search every casebook. You will not find any reported decision where a court is adjudicating the safety of an ingredient in a food product where the plaintiff is not the United States of America. The city attorney does not have the right to bring that claim, and therefore an important state interest was not shown. All we're deciding in this instance is whether the federal litigation can go forward or is going to be abstained on. Is that the bottom line of what we're doing here? On the younger point, the court also found that the anti-injunction act applied. There are multiple reasons why that doesn't apply. The simplest one, if you look at the complaint, we did not seek to enjoin an existing state court proceeding. So we weren't asking to enjoin. We were seeking declaratory relief. If the court reverses and remands, we will seek a declaration that FDA alone has the right to adjudicate the GRAS status. With the court's permission, I'll reserve the remaining time. Very well. Good morning, Your Honors. May it please the court, Tara Steele for the city attorney, Dennis Herrera. I'd like to begin briefly with the anti-injunction act while it's fresh in everyone's minds. The monster argues that the court erred by finding the anti-injunction act barred consideration of this complaint. Even if they were correct, they are not correct, but even if they were correct, the district court has the authority under this court's case law and the Supreme Court case law to exercise its discretion. So even if it could issue an injunction, it doesn't mean that it has to. Let me just ask, just as a matter of clarification, what I see here was that the monster asked for an injunction, in quotes, enforcing to prevent the city attorney from, in quotes, enforcing or directing the enforcement of the provisions of California business and professional code section 17,200 and 17,500 as regards plaintiff's energy drinks. Is that correct? That is correct, Your Honor. So that is, they are seeking an injunction. They are trying to stop the city attorney from doing something, right? Right, Your Honor. And the something that they sought to prevent the city from doing is investigating violations of 17,200 and pursuing those in state court. So it's simply not accurate to say that Monster did not seek an injunction to prevent the state court action. It did. We couldn't have proceeded had the injunction issued. But getting back to what I meant to say earlier is the district court has the authority to exercise its discretion. It expressly did so here in the interest of comedy and because another tribunal, the state court, was willing and able to hear this matter. And under the Supreme Court's analysis in Wilton and under this court's analysis in the Intelligender case, the district court properly could exercise that discretion. So the district court's decision can be affirmed on that grounds alone. Monster has offered no argument at all to suggest the district court abused its discretion. It disagrees with the court, of course, but it doesn't mean that there was an abuse of discretion. And if there are no questions about the Anti-Injunction Act, I'll turn to Younger abstention. As counsel has identified, the real important issue under Younger abstention that's presented in this case is the importance of state interest. Counsel is simply incorrect when they argue that this court must weigh federal and state interest. In fact, if you'll permit me, I'd like to read to you briefly from the San Jose Chamber of Commerce case in which this court said the Supreme Court has never suggested that the importance of an interest asserted by a federal plaintiff affects the Younger analysis. And that is because there simply is no weighing. Younger is a doctrine that looks to the importance of state interest, not to a balance or not to try to find the best forum. It's a doctrine in which the federal courts defer to state courts in the interest of comity. But they do have to weigh it, though, don't they? In other words, when the federal court determines whether these four factors are met, the court has to look at the facts and determine whether they're met. So to that degree, plus given the fact that you have to decide whether the proceedings implicate a state interest and so on, the court has to analyze that, and there is some balancing, is there not? There certainly is a look at the facts. There's no doubt that the court must exercise its prerogative to review the record, make sure there's an important state interest. But what the court must determine is, is there an important state interest, not is there also an important federal interest? The Supreme Court told us that in the New Orleans public service case. This court told us that in the San Jose case. And that's because, again, Younger is a deference doctrine to the state courts. As the Supreme Court said, there can be no greater federal interest than a constitutional right at stake. But even in those cases, we trust that the state courts can adjudicate it. And that's what's really at stake here is who gets to hear this case, who gets to decide. And under Younger and under the Anti-Injunction Act, it's the state court that gets to decide. Is there any aspect of this case that a California state court is incapable of handling, as far as you know? No, Your Honor, there is not. The complaint, in fact, we've already proceeded quite a long way in the state court. Just to clarify, I think our papers mentioned there was supposed to be a trial date in February. It got moved, so we are still proceeding in the state court. But no, Your Honor, there is no aspect of this case that can't be presented. The state court can consider constitutional claims. In fact, it already has. It can consider whether the complaint is preempted. In fact, it already has. It can consider every aspect of this case. Excuse me. Please, go ahead. Go ahead. When we consider, we hear your argument, can we consider the fact that Monster Drink is not going to be limited to California? So is Monster Drink going to have to have every state or any state that decides it wants to bring an action, bring the action? Should that be of any concern to this court when we listen to your argument? No, it should not, Your Honor. And again, it's because — So then 50 states could go after Monster, and in your view, there's no reason for 50 states not to do it if they want it. That's correct, Your Honor. And that's because of the system that the FDCA sets up is essentially a state and federal partnership in terms of food safety and enforcement. The FDCA doesn't prevent state laws concerning food safety. It requires that certain aspects of them be identical to federal law. But the state can still have its own law. It can provide its own remedies that can be enforced in state court. That's part of the system that Congress set up when enacting the FDCA. Is the tobacco litigation an analogy in this situation where virtually every state brought suits against the tobacco companies? It could be, yes, Your Honor. Yes, Your Honor. Like any other analogy, it's not perfect. There is no FDA component in the tobacco cases. There's not a federal agency whose charter includes regulating how much nicotine or carcinogen. That's true, Your Honor. So it's not — It's not a perfect analogy. But it is true that — Believe me, I learned an awful lot about tobacco litigation. Right. It is true that there is a role for the states in enforcement. And that's the system that Congress has set up. And if there are no further questions, I'll submit. Thank you very much. Appreciate it. Thank you. We'll hear rebuttal from Monster. Very briefly, let me follow on Judge Ferris' point. I would ask the Court to take another look at the TUREK, T-U-R-E-K, decision by Judge Posner in the Seventh Circuit, which focused specifically on the problem associated with 50 different states enforcing food laws. It's just not appropriate. With respect to — Is that a reason going to Younger, or is that a matter to be for the preemption question, which could be decided by either court? A state court can express its views on preemption. But as the Ninth Circuit has said, as the Supreme Court has made clear, is when a claim is preempted, it doesn't matter how important the state interest is. It's not as significant. Exactly. So couldn't that be decided in the state court? No. No. Why not? Younger abstention does not apply where the claim is preempted, because the state court plaintiff, the defendant in the federal court, has to show that, as the second element, that the state interests are more important than the federal interests. If they can't show that, it doesn't matter. Honestly, I'm not following you. I will admit that I'm not following you. Okay. Why cannot the state court decide the preemption? That's a question of law. Why can't the state court decide it if Younger abstention is not involved, or is involved, excuse me? Let me walk through it. In Younger, there are three elements. Yes. One is whether there is an ongoing state court proceeding. Right. That's easy. Second is whether there are important state interests. And that's the one I've been talking about. Number three is whether the state court can address the federal issue. So just because you can check off. Why can't the state court address the issue of preemption? It can. It can. It can satisfy. Bingo. Thank you. It can satisfy number three, but the city attorney can't satisfy number two here, that the state interests outweigh the federal interests. That wasn't number two. That is the second element. That's not the way it's usually stated. Okay. Excuse me. I'm sorry. No, no problem. Okay. Unfortunately, time has been used. I have 49 seconds if I'm not used to that. That's a negative. I'm in overtime. That's the trap door status. All right. Thank you, Your Honor. Thank you very much. Thanks to counsel for your fine arguments. We appreciate that. In the previous case, very fine lawyers represent your clients well. The case just argued is submitted.
judges: Sentelle, Farris, M. Smith